UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

C.S. GAIDRY, INC., ET AL.                CIVIL ACTION

VERSUS
                                         NO: 09-2762

UNION OIL CO. OF CAL., ET AL.            SECTION: R

**ORDER AND REASONS**

Before the Court is plaintiffs' Motion to Remand (R. Doc. 117). For the following reasons, the Court DENIES the motion.

**I.  Background**

Individual plaintiffs Wanda Gaidry, Wilson Gaidry, and corporate plaintiffs C.S. Gaidry, Inc., and W.L. Gaidry, LLC, own land in the Houma field in Terrebonne Parish, Louisiana. The plaintiffs contracted with several oil companies for certain oil, gas, and mineral leases on their property. Plaintiffs allege that, during the terms of those leases, the oil companies' production activities, particularly the disposal and storage of oilfield wastes in unlined earthen pits and wells, caused hazardous materials to contaminate the plaintiffs' property. Plaintiffs filed suit in Louisiana state court, naming as defendants Union Oil Company of California; Forest Oil Corporation; Chevron U.S.A., Inc.; and four individuals who were

field supervisors for the oil companies in the Houma field: Howard Dion, Earl Parfait, Leroy Charles, and Vincent Trahan (the "employee defendants").

Defendants timely removed the case to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332.[1]  Although the individual defendants Dion, Parfait, Charles, and Trahan, like plaintiffs, are all citizens of Louisiana, defendants assert in their Notice of Removal that the citizenship of those defendants must be ignored for purposes of evaluating diversity jurisdiction because those defendants were improperly joined for the purpose of defeating federal jurisdiction.  The defendants assert that there is complete diversity of citizenship among the properly joined defendants and that they therefore satisfied the requirements for removal.  Plaintiffs timely filed a motion to remand the case to state court, alleging that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332.

## II.  Legal Standard

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over

---

[1]  Chevron U.S.A, Inc., is incorporated under Pennsylvania law and has its principal place of business in California.  Union Oil Company is both incorporated in and has its principal place of business in California.  Forest Oil Corporation is incorporated under New York law and has its principal place of business in Colorado.

the action.  *See* 28 U.S.C. § 1441(a).  The removing party bears the burden of showing that federal jurisdiction exists.  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal is appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, No. 95-668, 1995 WL 419901, at *2 (E.D. La. July 13, 1995).  Though the Court must remand the case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal.  28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

When a nondiverse party is properly joined as a defendant, a defendant may not remove under 28 U.S.C. § 1332.  A defendant may remove, however, by showing that the nondiverse party was improperly joined.  *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).  Because this doctrine is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one.  *Id.*  Improper joinder may be established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the

plaintiff to establish a cause of action against the nondiverse defendant.[2]  *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003).  Because defendants have not alleged actual fraud, the Court will consider only the second test for improper joinder.

In determining whether a plaintiff is able to establish a cause of action, the defendant must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *Smallwood*, 385 F.3d at 573.  A court may use two different methods to assess a plaintiff's claims.  *Id.*  First, the court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."  *Id.*  Ordinarily, this type of analysis will be determinative. *See id.*  If it is apparent that the plaintiff has "misstated or omitted" determinative facts that would determine the propriety of joinder, however, "the district court may, in its discretion, pierce the pleadings and conduct a

---

[2]  The Fifth Circuit now officially refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005).  The term "fraudulent joinder," however, is still used in many Fifth Circuit cases.

summary inquiry." *Id.; see also Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007). In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). In addition, the Court must resolve all ambiguities of state law in favor of the nonremoving party. *Id.*

**III. Discussion**

*A. Improper Joinder*

Plaintiffs argue that the case should be remanded for want of subject matter jurisdiction because plaintiffs and the individual employee defendants are citizens of the same state. In response, the individual defendants argue that this court has subject matter jurisdiction over the controversy because the non-diverse defendants were improperly joined, and the remaining, properly joined defendants satisfy the requirements of complete diversity.

The Court turns first to the Rule 12(b)(6)-type analysis of improper joinder. Rule 12(b)(6) requires only that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Iqbal v. Ashcroft*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 229, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949-50.

Plaintiffs have alleged that Dion, Parfait, Charles, and Trahan negligently contributed to the environmental damage on the plaintiffs' property. (R. Doc. 1, Ex. 1 at 10.) As established in *Canter v. Koehring Co.*, 283 So. 2d 716 (La. 1973), Louisiana courts hold an individual employee liable to a third party when four criteria are satisfied:

> (1) the employer owes the plaintiff a duty of care;
>
> (2) the employer delegates that duty to the employee;
>
> (3) the employee, through personal fault, breaches the duty; and
>
> (4) the employee has a personal duty towards the plaintiff and a breach of that duty caused the plaintiff's damages.

*Canter*, 283 So. 2d at 721-22; *see also Ford v. Elsbury*, 32 F.3d 931, 935-36 (5th Cir. 1994). Defendants argue that the plaintiffs have failed to meet the requirements of both the second and fourth criteria described in *Canter*. (R. Doc. 21 at

5.)  In support, defendants rely heavily on *Kling Realty Co., Inc. v. Chevron USA Inc.*, 306 Fed. Appx. 24 (5th Cir. 2008) (*Kling I*), an oilfield pollution case with facts similar to the case before the court.  In that *per curiam* decision in which plaintiff challenged removal, the court held that the plaintiff's allegations were insufficient to establish a personal duty on the part of the employee defendant under the criteria established by *Canter*.  *Id.* at 28.

Since the parties have briefed this issue, *Kling I* has been vacated and superceded by a new opinion, which, unlike *Kling I*, is precedential and binding on this Court.  In that opinion, the Fifth Circuit, citing to an earlier precedent, held that *Canter* liability extends only to bodily-injury claims and not to property damage.  *Kling Realty Co., Inc. v. Chevron USA Inc.*, __ F.3d __, 2009 WL 1976027, at *3 (5th Cir. 2009) (*Kling II*) (citing *Unimobil 84 v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986)).

The Fifth Circuit's ruling is clear.  "Significantly, this court has held that *Canter* liability to third persons for the negligence of corporate officers and employees may only be imposed for bodily injury claims.  Because the only injury alleged in Kling's petition is. . . damage to property . . . Kling/Walet would not have a basis for recovery against [the nondiverse employee defendant] under Louisiana law as it has been

-7-

interpreted in this circuit." *Kling II*, 2009 WL 1976027, at *3 (citations omitted). Because plaintiffs in the present case allege only damage to property, they cannot state a claim against employee defendants. This Court therefore finds that these defendants were improperly joined. Complete diversity exists among the remaining parties.

*B.* Burford *Abstention*

Plaintiffs also argue that the Court should abstain from hearing this case under the abstention doctrine first examined in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976), courts may abstain from hearing cases in certain exceptional circumstances. In *Burford*, the Supreme Court reviewed a challenge to an oil-drilling permit issued by the Texas Railroad Commission. The Court provided an extensive overview of the regulatory structure that Texas used to oversee oil fields. In particular, the Court observed that the issue was one of great sensitivity and public importance, that Texas had established a comprehensive system of administrative and judicial review, and that uniformity in decisionmaking was essential to

effective regulation. *Burford*, 319 U.S. at 324-27. The Court further found that a federal court's exercise of equitable power had the potential to inject considerable confusion and disruption into the process. *Id*. at 327. Accordingly, the Supreme Court held that "a sound respect for the independence of state action requires the federal equity court to stay its hand." *Id*. at 334.

The *Burford* doctrine is applicable only in certain circumstances:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) when the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*") (quoting *Colo. River*, 424 U.S. at 814); *see also Munich Am. Reins. Co. v. Crawford*, 141 F.3d 585, 589 (5th Cir. 1998). The Fifth Circuit has noted that "[e]ssentially, *Burford* instructs a district court to weigh the federal interests in retaining jurisdiction over the dispute against the state's interest in independent action to uniformly address a matter of state concern, and to abstain when the balance tips in favor of the latter." *Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 700 (5th Cir. 1999). In addition, a

district court should consider (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law; (3) the importance of the state issue involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.  *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009); *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993).

This balance "only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (internal quotations omitted).  It is an abuse of discretion for a court to abstain outside of the doctrine's strictures.  *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004); *see also Webb*, 174 F.3d at 701.

*Burford* abstention is further limited to when a court is sitting in equity or otherwise has discretion to grant or deny relief.  *Quackenbush*, 517 U.S. at 730; *see also Webb*, 174 F.3d at 701-02.  When a court applies *Burford* abstention, it declines jurisdiction and does not merely postpone it, and the Supreme Court has held that courts may not apply abstention principles to dismiss or remand actions based on damages alone.  *Quackenbush*,

517 U.S. at 719-21. "A damages action . . . allows the court no discretion and may not be remanded." *Webb*, 174 F.3d at 701.

Plaintiffs assert that *Burford* abstention is warranted based on a Louisiana statute concerning remediation of environmental damage arising from oilfield sites. This statute requires that, after a party either admits liability for environmental damage or is found to be responsible by a factfinder, that party is required to submit a plan for remediation of the damage to the Louisiana Department of Natural Resources ("DNR"). LA. REV. STAT. § 30:29(C)(1). The non-responsible parties may submit their own plans or comment on the submitted plan. *Id*. The DNR, after review and public hearings, "shall approve or structure a plan based on the evidence submitted which the department determines to be the most feasible plan to evaluate or remediate the environmental damage and protect the health, safety, and welfare of the people." *Id*. § 29(C)(2).

The court is to accept this plan unless a party shows by a preponderance of the evidence that there is a more feasible plan to achieve the goals of the one approved by the DNR. The responsible party must fund the plan that is finally adopted by the court. *Id*. § 29(C)(5). All damages or payments awarded for the remediation of environmental damage are paid into the registry of the court, and the court must issue orders as necessary to ensure that the money is spent in accordance with

-11-

the remediation plan. The court retains jurisdiction over the funds until the remediation is completed. If the initial amount is insufficient to complete the plan, the court shall order the responsible parties to deposit additional funds. *Id*. § 29(D)(1)-(4). The statute does not foreclose private claims for environmental damage, nor does it preempt contractual provisions that require more remediation than would be required by the plan approved by the court. *Id*. § 29(H).

Plaintiffs' contention that this statute requires the Court to abstain under *Burford* ignores the fact that they are asking primarily for damages and not equitable relief. (R. Doc. 1, Ex. 1 at 13.) Again, in suits for damages in which the court has no discretion and engages in no weighing of the equities, *Burford* abstention is unwarranted. *See Webb*, 174 F.3d at 705.

This point is illustrated in *Brownell Land Co., L.L.C. v. Oxy USA Inc.*, 538 F. Supp. 2d 954 (E.D. La. 2007). In that case, in response to plaintiff's argument that *Burford* abstention applies to LA. REV. STAT. § 30:29, Judge Barbier noted that "[a]t first blush, it appears that plaintiff is correct, but closer inspection shows that the case cannot be abstained from." *Id*. at 959. The court was "not asked to weigh competing interests," and had "no discretion to award damages or not, if the jury finds that the land is contaminated." *Id*. The same is true here, and this Court cannot abstain under *Burford* as to these damages claims.

It is true that plaintiffs' prayer for relief includes an equitable claim. They ask for a "mandatory and prohibitory injunction to restore plaintiffs' property to its precontaminated condition and to prevent the migration and spread of toxic and hazardous substances onto plaintiffs' property." (R. Doc. 1, Ex. 1 at 13.) Some courts have suggested that *if Burford* is applicable to a case involving both legal and equitable claims, the equitable claims are dismissed entirely. *See Brownell Land Co., L.L.C. v. Apache Corp.*, No. Civ. A. 05-322, 2005 WL 3543772, at *5 (E.D. La. Oct. 13, 2005); *see also Neary v. Miltronics Mfg. Servs., Inc.*, 534 F. Supp. 2d 227, 232 (D.N.H. 2008); *In re MetLife Demutalization Litig.*, 156 F. Supp. 2d 254, 265 (E.D.N.Y. 2001); *Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 727 (4th Cir. 1999). These rulings presuppose that *Burford* applies in the first place. That is not the case here.

The Fifth Circuit has not faced the issue of whether *Burford* applies to LA. REV. STAT. § 30:29. This Court has ruled upon a similar case that raised both legal and equitable claims before the passage of § 30:29. In *Apache Corporation*, a landowner brought suit against the oil company that held a lease on its property, alleging that the company contaminated the property through its oil and gas exploration. 2005 WL 3543772, at *5. Among other claims, the plaintiff sought an injunction that would force the defendant to remove the alleged contamination and restore the property to its previous state.

The defendant argued that the court should abstain under *Burford* because certain State regulatory bodies, principally the Louisiana Department of Environmental Quality, had promulgated standards for the cleanup of contaminated property and could exercise some authority over plaintiff's claims. *Id.* at *4-5. In his ruling, Judge Africk declined to dismiss the equitable claims because *Burford* represents a narrow exception to a district court's obligation to adjudicate cases over which it has jurisdiction, and the case did not present difficult questions of state law that implicated substantial matters of state policy. "There is little concern here that this Court's decision could present any substantial impediment to Louisiana's autonomy." *Id*. at *5.

The Supreme Court has recognized that "[w]hile *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases when there is a 'potential for conflict' with state regulatory law or policy." *NOPSI*, 491 U.S. at 362 (quoting *Colo. River*, 424 U.S. at 815-16).

There has been no showing that an adjudication of this case would present difficult questions of state law. The allegations made in the complaint are in significant part those of negligence, nuisance, and breach of mineral lease. The Court does not see why the state law surrounding these claims is

difficult.  Furthermore, federal jurisdiction in this case will not disrupt state efforts to establish a coherent policy of substantial public concern.  Neither party to this case asks the Court to make a decision that would overturn an existing State administrative determination.  *See, e.g., Burford*, 319 U.S. at 316-17 (reviewing challenge brought in federal district court to order of Texas Railroad Commission).

Furthermore, there is no special state forum for judicial review of these types of claims.  Plaintiffs' request for injunctive relief is in essence an invocation of the remediation process outlined in LA. REV. STAT. § 30:29.  Again, they seek equitable relief "to restore plaintiffs' property to its precontaminated condition and to prevent the migration and spread of toxic and hazardous substances onto plaintiffs' property." (R. Doc. 1, Ex. 1 at 13.)  They additionally "assert that they have the right of action under La. R.S. 30:29 to seek cleanup of all the environmental damage associated with their property, regardless of whether or not the source of said environmental damage is located on or off their property," (*id*. at 12), and note that § 30:29 "contemplates that the feasible plan for remediation encompass all the various plumes of contamination on their property, regardless of whether such plumes have migrated off of their property."  (*Id*.)  The Court agrees that any remediation order it may issue would have to be consistent with the provisions of § 30:29.

As noted, if there is any finding or admission of liability for environmental damage, the Louisiana DNR will hold hearings upon the issue and approve a plan for the remediation of the pollution. The Court will then accept the plan (or one that, as shown by a preponderance of the evidence, will be more feasible "to adequately protect the environment and the public health, safety, and welfare") and ensure that the awarded funds are spent in a manner consistent with the plan. LA. REV. STAT. § 30:29(C)(5); *see also Brownell Land Co.*, 538 F. Supp. 2d at 959 (noting that after a finding of liability, "DNR will decide (with the court's approval) how much of those damages are to be used for remediation"). The statute itself does not require that all activity take place within the administrative process. Instead, it envisions private claims that lead to involvement by a court, and this Court would have to employ the same process and apply the same law as a State court in the same position. *Id*. This stands in significant contrast to cases such as *Burford* in which federal equitable rulings have the potential to disrupt highly centralized State administrative mechanisms.

The Court is cognizant that the claims in this matter arise under state law and that oilfield remediation is an issue of importance to the State of Louisiana. The *Burford* abstention doctrine, however, is narrow and sparingly invoked. *Quackenbush*, 517 U.S. at 726-28. Federal jurisdiction over this matter will not require confrontation with questions of unclear state law,

and it will comply with, not disrupt, the State's regulatory apparatus. *See Apache Corp*, 2005 WL 3543772, at *5. The Court therefore declines to apply the *Burford* doctrine in this matter.

## IV. Conclusion

For the foregoing reasons, the Court finds that plaintiffs cannot state a claim against the nondiverse employee defendants because their liability under *Canter* is foreclosed by the holding of *Kling II*. Accordingly, this Court retains jurisdiction over the existing parties. In addition, the Court finds that *Burford* abstention is not appropriate in this case. Plaintiffs' Motion to Remand is therefore DENIED.

**New Orleans, Louisiana, this 27th day of August, 2009.**

_____
**SARAH S. VANCE
UNITED STATES DISTRICT JUDGE**